UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 99 CR 928 |
| | ) | |
| NICOLE DAVIS, and | ) | |
| CALVIN KUYKENDOLL | ) | Hon. Matthew F. Kennelly |
| | ) | |

**NOTICE OF FILING**

TO:

| William H. Hooks | R. Eugene Pincham | Bill Murphy | Latrice Mosley |
|---|---|---|---|
| Hooks Law Offices, P.C. | 9316 S. Michigan | 542 S. Dearborn | U.S. Probation |
| 300 W. Washington, Suite 888 | Chicago, IL 60619 | Suite 750 | 55 E. Monroe |
| Chicago, IL 60606 | fax–(773) 568-7938 | Chicago, IL 60605 | Chicago, IL 60603 |
| fax–(312)553-1510 | | fax–(312) 697-0812 | fax–(312)408-5045 |

PLEASE TAKE NOTICE that on July 8, 2002, the undersigned filed with the Clerk of the Court the following document in the above captioned case: GOVERNMENT'S CONSOLIDATED RESPONSE TO DEFENDANTS' DEPARTURE MOTIONS AND OBJECTIONS TO THE PRESENTENCE REPORT in the above-captioned case.

Respectfully submitted,

PATRICK J. FITZGERALD
United States Attorney

By: _____
JOHN LAUSCH
Assistant United States Attorney

STATE OF ILLINOIS )
) SS
COUNTY OF COOK )

**CERTIFICATE OF SERVICE**

John Lausch, says that he is employed in the Office of the United States Attorney for the Northern District of Illinois; that on the 5th day of July 2002, he caused the foregoing NOTICE and the GOVERNMENT'S CONSOLIDATED RESPONSE TO DEFENDANTS' DEPARTURE MOTIONS AND OBJECTIONS TO THE PRESENTENCE REPORT to be delivered via fax to the above named individuals on said date.

_____

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



F I L E D

JUL 0 5 2002

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES OF AMERICA )
                                   )
    vs.                             ) No. 99 CR 928
                                   ) Hon. Matthew F. Kennelly
NICOLE DAVIS and )
CALVIN KUYKENDOLL )

**DOCKETED JUL 0 9 2002**

### GOVERNMENT'S CONSOLIDATED RESPONSE TO DEFENDANTS' DEPARTURE MOTIONS AND OBJECTIONS TO THE PRESENTENCE REPORT

Now comes the UNITED STATES OF AMERICA, by and through its attorney, PATRICK J. FITZGERALD, United States Attorney for the Northern District of Illinois, and respectfully submits the following Consolidated Response to Defendants' Objections to the PSR and Departure Motions.

**I.**    **Introduction**

Defendants assert various objections to the Probation Officer's Presentence Report ("PSR") and move for departure from the Sentencing Guidelines due to their alleged extraordinary circumstances. Defendant Davis claims that she has small children who will be adversely effected by her incarceration and that she cares for two minor relatives who suffer from the "AIDS virus."[1] Defendant Kuykendoll objects to various statements within the PSR, and objects to the Government's Information Stating Prior Conviction due to Kuykendoll's alleged lack of effective counsel during the case of the prior conviction. Kuykendoll further moves for downward departure

---

[1] Davis' counsel was given until July 1, 2002 in order to support her motion for downward departure based on disparity in sentencing between Davis and the cooperating defendant, Benjamin Haro. At the time of this submission, the Government had not received the disparity departure motion and therefore will not address that issue as to defendant Davis.

-1-



based on extraordinary family circumstances and a number of other issues that he claims are not taken into account in the Sentencing Guidelines, specifically, the cooperating defendant's sentence in comparison to the defendant's and the motivation of the cooperating defendant in choosing to cooperating against Kuykendoll.

Defendants' motions should be denied because they are not supported by the law in this Circuit nor the facts in this case.

## II. <u>Family Circumstances</u>

Both defendants move for departure based on extraordinary family circumstances. Because the defendants are married and the care givers for their two children, they both allege that their children will be unduly burdened by their dual incarceration. Both defendants claim that their children have already been adversely effected by their incarceration since their respective convictions. They cite to falling grades and instances of "acting out" that have occurred since they were incarcerated. Defendant Davis further claims that she cares for two minor relatives who suffer from the AIDS virus.[2] Defendant Kuykendoll claims that he cares for his son, Lottie, who also has been exhibiting behavior problems, and another relative, Maurice. Finally, Kuykendoll also claims that his mother relies on him to drive her to various doctors' appointments. According to the defendants, the totality of these family obligations and the extreme adverse impact on the children are a basis for a departure from the guidelines.

As this Court is aware, family responsibilities are a permissible, but discouraged basis for a departure. *United States v. Carter*, 122 F.3d 469, 473-74 (7th Cir. 1997); U.S.S.G. § 5H1.6. For

---

[2] At no point during the Probation Officer's interview of Davis or throughout the pretrial release period did Davis ever mention that she cared for these children.

a departure to be warranted, the family responsibility must be present to such a degree that it takes the case outside the heartland of cases in which the factor is present and has already been considered by the Sentencing Commission. "If the special factor is a discouraged factor . . . the court should depart only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present." *Koon v. United States*, 518 U.S. 81, 99 (1996).

Although *Koon* requires "exceptional" family circumstances for a downward departure, there is nothing extraordinary about the circumstances present in this case. Defendants' circumstances are no different than the majority of married defendants facing incarceration, except that defendants are lucky enough to have a relative who loves them and is willing to care for them while the defendants serve their sentence. *See* Davis PSR, at p. 24, lines 714-20; Kuykendoll PSR, at p. 20, lines 564-70; *cf. United States v. Leandre*, 132 F.3d 796 (D.C. Cir. 1998) (single father of two young children who would be placed in foster care upon defendant's incarceration not entitled to downward departure). The defendants' circumstances do not rise to the level of what the is considered to be "extraordinary" by the Seventh Circuit. Indeed, in *United States v. Jaderany*, 221 F.3d 989, 996 (7th Cir. 2000), the Seventh Circuit noted that, "[t]he Guidelines recognizes that many persons convicted of a criminal offense have family responsibilities, including responsibilities to their children; such responsibilities, standing alone, cannot be considered extraordinary." *Id.* at 996 (*citing United States v. Stefonek*, 179 F.3d 1030, 1038 (7th Cir. 1999), *cert. denied*, 120 S. Ct. 1177 (2000); *Carter*, 122 F.3d at 475; *United States v. Canoy*, 38 F.3d 893, 907 (7th Cir.1994)). Moreover, the court stressed, "[w]e have recognized that a defendant's ability to rely on a supportive spouse or other relatives to look after his children makes his case for a downward departure less compelling." *Jaderany*, 221 F.3d at 996.

-3-

The Seventh Circuit has found that even being a married parent of an infant needing care is not exceptional. "Imprisoning the mother of a child for even a short period of time is bound to be a wrenching experience for the child, but the guidelines do not contemplate a discount for parents of children." *United States v. Stefonek*, 179 F.3d 1030, 1038 (7th Cir. 1999) (vacating downward departure for resentencing), *cert. denied*, 120 S. Ct. 1177 (2000); *accord, United States v. Archuleta*, 128 F.3d 1446 (10th Cir. 1997) (collecting cases rejecting downward departure for single parent, since imprisonment of sole, custodial parent is not extraordinary). Caring for other children outside of the nuclear family also fails to rise to the level of being extraordinary. *United States v. Reed*, 264 F.3d 640 (6th Cir. 2001) (defendant who cared for her sister's five children not entitled to departure).

Family considerations are "discouraged" and warrant a departure only in the extraordinary and unusual case. *United States v. Bautista*, 258 F.3d 602, 607 (7th Cir. 2001); *Carter*, 122 F.3d at 474. More common, as the court in *Carter* stated, are the cases which have denied a downward departure for family responsibilities, even in compelling situations. *Id. (citing United States v. Bieri*, 21 F.3d 811 (8th Cir. 1994)) (departure rejected where both parents of small children were incarcerated); *United States v. Mogel*, 956 F.2d 1555 (11th Cir. 1992) (departure rejected though defendant supported two minor children and her mother and was first-time offender); *United States v. Johnson*, 908 F.2d 396 (8th Cir. 1990) (departure rejected for single mother of infant).

Defendants' family circumstances, when compared to the above cases, do not remove their circumstances from the "heartland" of the Guidelines. As the First Circuit noted in *United States v. Rivera*, 994 F.2d 942, 948 (1st Cir. 1993), it is not unusual "to find that a convicted drug offender is a [parent] with family responsibilities . . . . [Only] the nature and magnitude of family responsibilities (many children? with handicaps? no money? no place for children to go?) may

-4-

transform the 'ordinary' case . . . into a case that is not at all ordinary."

The Seventh Circuit has observed that the "disintegration of existing family life or relationships is insufficient to warrant a departure, as that is to be expected when a family member engages in criminal activity that results in incarceration." *United States v. Canoy*, 38 F.3d 893, 907 (7th Cir. 1994); *United States v. Guy*, 174 F.3d 859, 860 (7th Cir. 1999) (citing *Canoy*). Disruption of the defendant's life, and the related difficulties for those who depend on the defendant, are inherent to the punishment of incarceration.

Further, the goal of the guidelines "is to place federal sentencing on an objective, uniform, and rational (or at least articulable, nonintuitive) basis. If family history or circumstances were in an average case a permissible basis for leniency, this would resurrect the pre-guidelines regime of discretionary sentencing." *United States v. Pullen*, 89 F.3d 368, 371 (7th Cir. 1996). The court in *Pullen* was concerned about the type of argument being put forth by the defendant in the instant matter. Defendants want this Court to use their family situation as a "permissible basis for leniency" under the guise of fulfilling statutory sentencing purposes. *Id.* "By this means, the guidelines [would] be unraveled before the eyes of the judge." *Carter*, 122 F.3d at 474-75 (citing *Pullen*).

Aside from the care of their own children, defendant Kuykendoll's care of his mother is also not outside of the heartland of cases. In a similar case, in which the defendant sought a departure to care for his aged mother, the Tenth Circuit declined to grant a departure because the demands upon the defendant were not so extraordinary that they separated him from other criminal defendants. *United States v. Archuleta*, 128 F.3d 1446, 1451-52 (10th Cir. 1997) (departure denied for defendant who cared for both his 74-year-old diabetic mother and was also the sole caretaker of his two minor children). Even though the defendant in *Archuleta* argued that there was nobody else available to

care for his children and his mother, the court declined to depart after questioning the availability of home nurses and other similar services for the elderly. *Id.* at 1450. In addition, the court noted that the defendant had a job, forcing him to be away from his mother suggesting that she was not as dependent upon him as he stated. *Id.* at 1450 (n.8). Finally, the availability of other alternatives for care and a lack of evidence regarding two of the defendant's siblings were also troublesome to the court in denying departure request. *Id.* at 1451. As a result, the court determined that the defendant's family ties did not support a downward departure.

Kuykendoll seeks a departure here because he is, in part, the caretaker of his mother. Like the defendant in *Archuleta*, however, he has failed to show the court that his mother's care cannot be undertaken by other family members or health care services. *See also United States v. Allen*, 87 F.3d 1224, 1225-26 (11th Cir. 1996) (vacating previously granted downward departure motion for defendant who was sole caretaker for 70-year old father suffering from both Alzheimer's and Parkinson's diseases noting that departures are not to be given to mothers with small children and therefore there was "no reason to treat a defendant who is the primary caretaker of an inferred parent any differently").

In all, defendant Davis' and defendant Kuykendoll's family obligations are not so extraordinary that they fall outside the heartland of cases and the typical case for many criminal defendants. *See e.g. United States v. Sweeting*, 213 F.3d 95 (3rd Cir. 2000) (no departure for mother who was responsible for the care of five children, one with Tourette's Syndrome); *United States v. Dyce*, 91 F.3d 1462 (D.C. Cir. 1996) (no departure for single mother of three children under the age of four); *United States v. Rybicki*, 96 F.3d 754 (4th Cir. 1996) (no departure for decorated Vietnam War veteran with nine-year-old son with neurological problems and wife with fragile mental health).

Defendants here have "shown nothing more than that which innumerable defendants could no doubt establish: namely, that the imposition of prison sentences normally disrupts [familial] relationships." *Allen*, 87 F.3d at 1226 (citations omitted). Accordingly, defendants' request for downward departure on the basis of extraordinary family circumstances should be denied.

### III. 5K2.0 Motion

Defendant Kuykendoll further moves this Court for departure based on a number of factors that he claims were not taken into account in the Sentencing Guidelines. First, Kuykendoll claims that there are "very extraordinary and disturbing circumstances by which Ms. Davis and Mr. Kuykendoll were selected by the informant to target for being set up," and that these circumstances warrant a departure. Second, Kuykendoll claims his prior convictions exaggerate his criminal history. Third, he claims that his role in the offense was "significantly less serious" than that of his wife Nicole Davis, and as such, he should be held "less culpable" than her.

Kuykendoll's motion should be denied because it is entirely unsupported by both the evidence in this case and the law. Contrary to Kuykendoll's bald assertion that the informant "targeted these defendants with a racist motivation," there is not one shred of evidence that supports Kuykendoll's theory that Haro targeted Davis and Kuykendoll due to their race. In fact, the mere allegation of "targeting" on behalf of Haro is ridiculous. Haro was in government custody from the moment he was arrested in September until the undercover operation leading to defendants' arrest in November 1999. It was only within the controlled setting of agent debriefings that various information was provided to the DEA and then assessed for potential undercover operations. In fact, the reason that the agents and Haro called Davis' pager in November 1999 is clear from his debriefings: Davis was Haro's largest single purchaser of cocaine. To suggest that race had anything

-7-

to do with the undercover operation of Davis and Kuykendoll is outrageous and unsupported by the evidence.

Moreover, Kuykendoll's attempt to craft a sentencing disparity argument by pointing to the sentence Haro received from a District Judge in Texas after Haro pled guilty and cooperated with the government must similarly fail. This argument fails as a matter of law because a disparity "that results from the proper application of the Guidelines to the particular circumstances of a case. . . . can never be a basis for departure from the Guidelines' sentencing range because it is the application of the Guidelines that created the disparity in the first place." *See United States v. Hall*, 212 F.3d 1016, 1020 (7th Cir. 2000) (emphasis supplied in *Hall*).[3]

Haro's sentence was reduced based on his acceptance of responsibility and on the substantial assistance he provided to the government in the investigation and prosecution of other individuals, which resulted in a downward departure under U.S.S.G. § 5K1.1. Both defendants here held the key to receiving a significantly reduced sentence like Haro's, but they both refused. Their expected sentences cannot be equated with Haro's sentence because Davis and Kuykendoll did not plead guilty to their offenses, and they did not even attempt to receive the benefit of such a substantial assistance departure. Accordingly, any disparity argument is wholly without merit.

---

[3] *See also Hall*, 212 F.3d at 1020 ("[When] a defendant's substantial assistance to the government and a defendant's acceptance of a plea agreement are the mitigating sentencing factors, . . . any resulting disparity between the sentences of the co- conspirators is the result of the application of these factors. 'The Guidelines' goal of national sentencing uniformity is not aimed only at the particular criminal conduct that co-conspirators may share, but also addresses other factors that often vary between co-conspirators' like acceptance of plea agreements and assistance to the government. *Justified disparities like these, therefore, can never be a basis for departure from the Sentencing Guidelines as it is the Guidelines that produce the disparity*.") (quoting *United States v. Meza*, 127 F.3d 545, 549-50 (7th Cir. 1997)(emphasis supplied in *Hall*)).

As for Kuykendoll's bare bones claim that his "prior criminal convictions history exaggerate his prior criminal history," this claim should be rejected as it is not supported by any law or specific facts.

Finally, Kuykendoll's assertion that he should be treated as a minor player in light of the jury's verdict and the evidence at trial should be rejected as a basis for a downward departure for the same reasons he is not entitled to a mitigating role in the offense reduction, which is discussed below in Section V.

### IV. Defendant Kuykendoll's Objection to the Government's Use of Previous Conviction

Kuykendoll challenges the government's attempt to enhance his sentence based on his 1988 state court conviction for possession of a controlled substance with intent to deliver (case number 87 CR 8772), claiming that he was denied his Sixth Amendment right to counsel because his lawyer was ineffective. Kuykendoll is barred from collaterally challenging the validity of this prior conviction, as it occurred more than five years before the government filed its information alleging the § 851 enhancement in this case. *See* 18 U.S.C. § 851(e); *United States v. Arango-Montoya*, 61 F.3d 1331, 1338 (7th Cir. 1995) (upholding constitutionality of § 851(e)); *see also Ryan v. United States*, 214 F.3d 877 (7th Cir. 2000).[4]

### V. Defendant Kuykendoll's Objections to the PSR

Kuykendoll objects to various statements in the PSR regarding the interpretation of his criminal activity by others such as the cooperating defendant, the government, and the probation officer. Because the PSR contains the source of each statement, those statements should not be

---

[4]If the statute of limitations did not apply here, a hearing would be required, at which Kuykendoll would have the burden of supporting his factual allegations by a preponderance of the evidence. *See* 18 U.S.C. § 851(c)(1) & (2).

-9-

stricken from the report merely because Kuykendoll disagrees with the interpretation. As to the other issues presented that raise legal issues, the government responds as follows:

A) Kuykendoll objects to the Probation Officer's failure to afford him with acceptance of responsibility points in spite of going to trial and continually minimizing his role in the offense. Kuykendoll had done nothing to demonstrate that he accepts responsibility for his criminal conduct here; accordingly, he should receive no reduction under Guideline § 3E1.1.

Guideline §3E1.1 provides that a defendant "who clearly demonstrates acceptance of responsibility" may receive a two-level reduction in his base offense level. U.S.S.G. §3E1.1(a). The application notes subsequent to that section then delineate the types of conduct that would satisfy the requirements of §3E1.1. Those requirements include: truthfully admitting the criminal conduct and voluntarily withdrawing from the criminal conduct. U.S.S.G. §3E1.1, comment. (n.1). The Commission clearly states that "[t]he adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt." U.S.S.G. §3E1.1, comment. (n.1).

Guideline §3E1.1(b) allows for the reduction of a third base offense level in certain circumstances. That section provides, in pertinent part:

> If the defendant. . . has assisted authorities in the investigation or prosecution of his own misconduct by taking one or more of the following steps: . . . .
>
> > (1) timely providing complete information to the government concerning his involvement in the offense; or
> >
> > (2) timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently, decrease the offense level by 1 additional level.

-10-

In short, the Guidelines reward defendants for both accepting their criminal liability (§3E1.1(a)), and for doing so in a timely manner (§3E1.1(b)), thus saving the government the added expenses of continuing an investigation and preparing for trial, as well as, reducing the court's docket congestion. In contrast, Kuykendoll did not plead guilty, he required the government to prepare and present its case at trial, and he clearly continues to minimize his role and his criminal liability. The Probation Officer correctly found that Kuykendoll should not receive an acceptance of responsibility reduction.

B) Kuykendoll objects to the Probation Officer's calculation of drug quantity applicable to him. In essence, Kuykendoll objects to being held responsible for any drugs other than one kilogram of heroin and five kilograms of cocaine.

The plain language of the guidelines negates Kuykendoll's position. Section 1B1.3(a) of the Guidelines provides:

(a) ... the base offense level ... shall be determined on the basis of the following:

> all acts and omissions committed, aided, abetted, counseled, commanded, induced procured, or willfully caused by the defendant; and
> in the case of jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense;

A defendant may be accountable for criminal acts under either subsection A or subsection B or both. *See* USSG § 1B1.3, comment (n.2, Illustration (a)(1)). Questions about the scope of "jointly undertaken criminal activity" and "reasonable foreseeab[ility]" relate only to accountability under subsection B. As stated in Application Note 2:

-11-

> With respect to offenses involving contraband (including controlled substances), the defendant is accountable for all quantities of contraband with which he was directly involved and, in the case of a jointly undertaken criminal activity, all reasonably foreseeable quantities of contraband that were within the scope of criminal activity that he jointly undertook.
>
> The requirement of reasonable foreseeability applies only in respect to the conduct (*i.e.*, the acts and omissions) of others under subsection (a)(1)(B). It does not apply to conduct that the defendant personally undertakes, aids, abets, counsels, commands, induces, procures, or willfully causes; such conduct is addressed under subsection (a)(1)(A).

Therefore, Kuykendoll is accountable for the entire purchase of drugs (cocaine and heroin) under both subsection A and subsection B. Kuykendoll is accountable under subsection A because he aided and abetted the purchase of the entire quantity of drugs and he is accountable under subsection B because the possession was within the scope of the criminal activity he jointly undertook with his wife and was reasonably foreseeable to him.

Kuykendoll attempts to limit his drug quantity level by alleging that he is solely responsible for the heroin purchase and for only five kilograms of cocaine. What Kuykendoll overlooks is the overwhelming evidence on tape indicating that the November 29, 1999 transaction was to be for one kilogram of heroin and *fifty kilograms of cocaine* – not five. Kuykendoll also ignores the fact that he actively participated in telephone conversations with Haro discussing his and his wife's attempt to obtain both kinds of drugs in that single transaction. During one of the conversations, Kuykendoll and his wife hand the telephone back and forth to each other; and in another, Kuykendoll is heard discussing the transaction with his wife in the background. These conversations demonstrate that Kuykendoll was well aware of the scope of the drug transaction. By participating in these conversations, Kuykendoll was, at the very least, an aider and abettor of the cocaine part of the drug transaction. As an aider and abettor of this part of the deal, Kuykendoll "may be punished with the same severity as the principal." *United States v. Corral-Ibarra*, 25 F.3d 430, 436 (7th Cir. 1994).

Indeed, even if Kuykendoll underestimated the full scope of the deal, even "by a factor of ten or more," the quantity of drugs that was reasonably foreseeable to him is legally irrelevant to the computation of his base offense level under . . . Section 1B1.3(a)(1)." *Id.*[5]

In any event, the possession and distribution of a significant amount of heroin *and cocaine* was reasonably foreseeable to Kuykendoll and within the scope of the conspiracy that he joined as full, knowing participant; the full amount of cocaine is therefore attributable to him. In sentencing pursuant to U.S.S.G. §1B1.3(a)(1)(B), the court takes into account "reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." U.S.S.G. §1B1.3(a)(1)(B). Although a defendant does not become liable in sentencing for the acts of coconspirators if those acts did not advance an objective within the conspiracy that he joined, once the defendant goes beyond a simple buyer-seller relationship and performs an act that advances an objective of a conspiracy, he will be held accountable for the entire drug quantity in that conspiracy. *See United States v. Edwards*, 115 F.3d 1322, 1326 (7th Cir. 1997)(Answering telephone, taking drug orders, delivering and picking up orders furthered an objective of the conspiracy in spite of

---

[5] A wide variety of minor acts have been determined to be aiding and abetting activity for which a defendant is held accountable at the time of sentencing. *See, e.g., United States v. Rodriguez*, 831 F.2d 162, 167 (7th Cir. 1987) (defendant who placed phone calls that facilitated the pick-up and delivery of a shipment of cocaine aided and abetted the possession with intent to distribute that shipment); *United States v. Galiffa*, 734 F.2d 306, 311 (7th Cir. 1984) (defendant who performed errands such as weighing bales and delivering marijuana to others aided and abetted the possession with intent to distribute the marijuana); *United States v. Orteaga*, 44 F.3d 505, 507 (7th Cir. 1995) (defendant who "merely rendered assistance" by watching over van that contained heroin and was not compensated for his role aided and abetted the possession with the intent to distribute the heroin); *United States v. Keck*, 773 F.2d 759, 769 (7th Cir. 1985) (defendant who possessed key to lockbox and house where he knew others were involved in narcotics aided and abetted codefendant's possession with intent to distribute cocaine); *United States v. Wesson*, 889 F.2d 134, 135 (7th Cir. 1989)("middlemen" aid and abet the possession of drugs when they procure customers for the market).

defendant's lack of knowledge of the full scope of conspiracy).

Although Kuykendoll attempts to separate himself from his wife's dealing, the government "need not tie [him] to each transaction so long as the conspirator could reasonably foresee that the transactions could occur." *United States v. Jarrett*, 133 F.3d 519, 531 (7th Cir. 1998). Kuykendoll is responsible for his own portion of the larger load, as well as the other portions being distributed to others of which he is aware. *See United States v. McEntire*, 153 F.3d 424, 437 (7th Cir. 1998)(Defendant who received one-third of total drug quantity and was aware of a subsequent three way split held accountable for entire drug quantity); *United States v. Lewis*, 117 F.3d 980, 985 (7th Cir. 1997)(Defendant who knew that supplier was a distributor to others held responsible for "the other halves of the purchases" that supplier provided to others).

Based on the evidence in this case, which was set out in more detail in the Government's Objections to the PSR, at the very least Kuykendoll could reasonably foresee that the drug distribution operation he participated in with his wife amounted to more than 155 kilograms of cocaine in addition to the one kilogram of heroin. Accordingly, he should be held responsible for at least that amount.

C) Kuykendoll objects to the Probation Officer's failure to provide him with a two-level reduction for his alleged minor role in the offense.

As a co-conspirator who willfully participated in the conspiracy and teamed up with Davis in obtaining cocaine from Haro. Kuykendoll does not deserve a role in the offense reduction. During the course of the conspiracy, Kuykendoll did not appear to take orders from his wife, he did not appear to have a significantly smaller role in the negotiation of the drug deals, and he did not appear to benefit any less than his wife. As such, he cannot readily be described as a minor participant in their joint criminal activity.

Rather, Kuykendoll's attempt to attack the evidence of his active role in the conspiracy merely highlights his minimization of his criminal activity. By citing to the number of months that supposedly lapsed between the time that Haro had last spoken to Davis (on the tape they refer to eight), Kuykendoll attempts to show that he was not involved in any previous drug dealing. What Kuykendoll ignores is that the government took down Haro's load of cocaine that was coming to Chicago the last week of May 1999, and that the calls to Davis did not take place until November 29, 1999: a period of approximately seven months. Haro himself never claimed to have dealt with Davis in the interim and he would not have been able to after his arrest in the first week of September 1999. Furthermore, Haro's testimony that Kuykendoll was usually present with Davis during the negotiation of their drug transactions was entirely corroborated by the taped telephone conversations in November 1999, which revealed a distinct familiarity between Haro and Kuykendoll.

## VI. Conclusion

For the reasons stated in this response, the government respectfully requests that defendants' motions for downward departure be denied and that defendant Kuykendoll's objections to the PSR be overruled.

Respectfully submitted,

**PATRICK J. FITZGERALD**
United States Attorney

By: _____
**VIRGINIA M. KENDALL**
**JOHN LAUSCH**
Assistant U.S. Attorneys
U.S. Attorney's Office
219 S. Dearborn Street
Chicago, Illinois 60604
(312) 353-5300

-15-